

FILED
6-20-2013
JUN 2 0 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

RECEIVED
JUN 2 0 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
v. )
)
DMITRY FIRTASH, ) Case No **13 CR 515**
    also known as "Dmytro Firtash," and "DF," )
ANDRAS KNOPP, ) Violations: Title 18, United
SUREN GEVORGYAN, ) States Code, Sections 371,
GAJENDRA LAL, ) 1952, 1956, 1962 and 2
    also known as "Gaj," )
PERIYASAMY SUNDERALINGAM, )
    also known as "Sunder," )
K.V.P. RAMACHANDRA RAO, )
    also known as "KVP," and "Dr. KVP" )

JUDGE PALLMEYER
MAGISTRATE JUDGE MARTIN

## COUNT ONE

THE SPECIAL JANUARY 2012 GRAND JURY charges:

1.    At times material to this indictment:

    a.    Defendant DMITRY FIRTASH, also known as "Dmytro Firtash," and "DF," exercised control over "Group DF," an international conglomerate of companies that were directly and indirectly owned by Group DF Limited, a company organized under the laws of the British Virgin Islands. The companies within Group DF included, but were not limited to, the companies listed in Schedule A to this indictment, which is incorporated herein by reference. Among them were the following companies:

FILED
JUN 2 0 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

      i.      Ostchem Holding AG was a company registered in, and with headquarters in, Vienna, Austria. Ostchem Holding AG was in the business of mining and processing minerals, including titanium.

      ii.      Global Energy Mining and Minerals Limited ("GEMM") was a company organized under the laws of Hungary. GEMM was the majority shareholder of Bothli Trade AG.

      iii.      Bothli Trade AG was a company organized under the laws of Switzerland.

      b.      The Central Government of the Republic of India was based in New Delhi, India. Andhra Pradesh was a State within the Republic of India. The State Government of Andhra Pradesh was based in Hyderabad, India.

      c.      In or around April 2006, Bothli Trade AG entered into a memorandum of understanding with the State Government of Andhra Pradesh. In the memorandum of understanding, Bothli Trade AG and the State Government of Andhra Pradesh agreed to set up a joint venture for the purpose of mining various minerals within Andhra Pradesh, including ilmenite, a mineral which can be processed into various titanium-based products such as titanium sponge (the "project").

      d.      Company A was a Delaware corporation that maintained its corporate headquarters and principal executive offices in Chicago, Illinois. Company A was a purchaser of titanium products.

2

e.    In or around February 2007, Company A entered into a memorandum of agreement with Ostchem Holding AG, by and through Bothli Trade AG.  The agreement specified that the parties would work towards entering into a supply agreement whereby Bothli Trade AG would supply 5,000,000 to 12,000,000 pounds of titanium sponge to Company A on an annual basis.  The titanium sponge to be supplied to Company A was to be derived from the project.

f.    Licenses were required for the project before mining could begin. These licenses required the approval of both the State Government of Andhra Pradesh and the Central Government prior to their issuance.  The approval and issuance of such licenses were discretionary, non-routine governmental actions.

g.    There were in force and effect criminal statutes of the Republic of India prohibiting bribery of public officials, including the Prevention of Corruption Act, 1988.  The Prevention of Corruption Act, 1988, included the following provisions, the violation of each of which was punishable by a term of imprisonment of more than one year:

i.    Section 7 made it an offense for a public servant to accept, obtain, agree to accept or attempt to obtain, for himself or for any other person, any gratification (including but not limited to money) other than legal remuneration as a motive or reward for: doing any official act; showing favor to any person in the exercise of official functions; or rendering or attempting to render any service to any person,

3

with the Central Government, any State Government, any local authority, corporation or Government company, or with any public servant.

       ii.      Section 8 made it an offense for any person to accept, obtain, agree to accept or attempt to obtain, for himself or for any other person, any gratification (including but not limited to money) as a motive or reward for inducing, by corrupt or illegal means, any public servant to: do any official act; show favor to any person in the exercise of official functions; or render or attempt to render any service to any person, with the Central Government, any State Government, any local authority, corporation or Government company, or with any public servant.

       iii.      Section 9 made it an offense for any person to accept, obtain, agree to accept or attempt to obtain, for himself or for any other person, any gratification (including but not limited to money) as a motive or reward for inducing, by the exercise of personal influence, any public servant to: do any official act; show favor to any person in the exercise of official functions; or render or attempt to render any service to any person, with the Central Government, any State Government, any local authority, corporation or Government company, or with any public servant.

       iv.      Section 10 made it an offense for a public servant to abet a violation of Section 8 or Section 9.

       h.      Y.S. Rajasekhara Reddy, now deceased, was a member of the State Legislature of Andhra Pradesh and was the Chief Minister of the State of Andhra Pradesh.

      i.      Defendant K.V.P. RAMACHANDRA RAO, also known as "KVP," and "Dr. KVP," was an official of the State Government of Andhra Pradesh and was a close advisor to Chief Minister Y.S. Rajasekhara Reddy.

      j.      Defendant GAJENDRA LAL, also known as "Gaj," was a permanent resident of the United States and resided in Winston-Salem, North Carolina.

## I. **THE ENTERPRISE**

2.      There existed a criminal organization, that is, a group of individuals consisting of defendants DMITRY FIRTASH, also known as "Dmytro Firtash," and "DF," ANDRAS KNOPP, SUREN GEVORGYAN, GAJENDRA LAL, also known as "Gaj," PERIYASAMY SUNDERALINGAM, also known as "Sunder," K.V.P. RAMACHANDRA RAO, also known as "KVP," and "Dr. KVP," and others known and unknown.

3.      This criminal organization, including its leadership, membership and associates, constituted an "enterprise" as that term is used in Title 18, United States Code, Section 1961(4) (hereinafter, the "enterprise"), that is, a group of individuals associated in fact, which enterprise was engaged in, and the activities of which affected, interstate commerce.

4.      The members of the enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the

objectives of the enterprise. The purposes of the enterprise included but were not limited to providing income for certain of its members through illegal activities.

5. The illegal activities of the enterprise included, but were not limited to: (a) utilizing United States financial institutions to engage in the international transmission of millions of dollars for the purpose of bribing Indian public officials in connection with obtaining approval of the necessary licenses for the project, which project was forecast to generate more than $500 million in revenues per year, including revenues generated from the sale of titanium products to Company A; (b) using facilities of interstate and foreign commerce to coordinate, plan, facilitate and promote the bribery of Indian public officials; (c) using Group DF, including its business reputation and financial resources, in order to advance, participate in and finance the project, as well as to fund, transfer and conceal bribe payments made in connection with the project; (d) using threats and intimidation to advance the interests of the enterprise's illegal activities; and (e) traveling in interstate and foreign commerce to further the goals of the criminal enterprise.

6. In order to carry out its activities, the enterprise utilized individuals employed by and associated with it who had varying roles and responsibilities. The roles and responsibilities were as follows:

## DEFENDANT DMITRY FIRTASH

7. Defendant DMITRY FIRTASH, also known as "Dmytro Firtash," and "DF," was the leader of the enterprise. In that capacity, he oversaw, directed and

guided certain of the enterprise's illegal activities. Among other things, FIRTASH caused the direct and indirect participation of certain Group DF companies in the project. FIRTASH met with Indian government officials, including Chief Minister Y.S. Rajasekhara Reddy, for the purpose of discussing the project and its progress. FIRTASH authorized payment of at least $18.5 million in bribes to officials of both the State Government of Andhra Pradesh and the Central Government of India to secure the approval of licenses for the project. FIRTASH further directed his subordinates to create documentation to make it falsely appear that money transferred for the purpose of paying these bribes was transferred for legitimate commercial purposes. FIRTASH appointed various of his subordinates, including but not limited to ANDRAS KNOPP, to oversee efforts to obtain the licenses through bribery.

## DEFENDANT ANDRAS KNOPP

8.     Defendant ANDRAS KNOPP occupied a supervisory role in the enterprise. KNOPP, along with FIRTASH, met with Indian government officials concerning the project. KNOPP also met with representatives of Company A for the purpose of discussing the supply of titanium products to Company A that would be derived from the project. KNOPP supervised and directed the activities of others employed by and associated with the enterprise, including but not limited to defendant GAJENDRA LAL. KNOPP, along with FIRTASH, was consulted in connection with major decision-making relating to the project, including significant action taken with respect to the payment of bribes to Indian public officials.

7

## DEFENDANT SUREN GEVORGYAN

9.      Defendant SUREN GEVORGYAN served the enterprise by, among other things: (i) traveling to Seattle, Washington, and meeting with personnel from Company A concerning the potential supply of titanium products to Company A; (ii) signing documentation to make it falsely appear that money transferred for the purpose of paying bribes was transferred for legitimate commercial purposes; (iii) monitoring the total amount of bribe payments made; and (iv) coordinating transfers of money to be used to bribe Indian public officials.

## DEFENDANT GAJENDRA LAL

10.      Defendant GAJENDRA LAL, also known as "Gaj," served the enterprise by, among other things: (i) providing status reports to FIRTASH and KNOPP concerning efforts to obtain licenses for the project; (ii) monitoring the total amount of bribe payments made; (iii) seeking FIRTASH's and KNOPP's authorization to pay additional bribes; (iv) recommending what course of action to take on the project, including whether and in what manner to pay certain bribes to Indian public officials; (v) causing the preparation of documentation to make it falsely appear that money transferred for the purpose of paying bribes was transferred for legitimate commercial purposes; and (vi) coordinating transfers of money to be used to bribe Indian public officials.

## DEFENDANT PERIYASAMY SUNDERALINGAM

11.     Defendant PERIYASAMY SUNDERALINGAM, also known as "Sunder," served the enterprise by, among other things: (i) meeting with defendant K.V.P. RAMACHANDRA RAO for the purpose of determining the total amount of bribes to be paid to Indian public officials in return for approval of the licenses required for the project, and advising other enterprise members of the results of the meeting; (ii) identifying various foreign bank accounts held in the names of nominees outside of India that could be used to funnel bribe payments to RAO; and (iii) monitoring the total amount of bribe payments made.

## DEFENDANT K.V.P. RAMACHANDRA RAO

12.     Defendant K.V.P. RAMACHANDRA RAO, also known as "KVP," and "Dr. KVP," served the enterprise by, among other things: (i) abusing his position as an official of the State of Andhra Pradesh and close advisor to Chief Minister Y.S. Rajasekhara Reddy to solicit bribes for Indian public officials, including himself, in return for approval of licenses for the project; (ii) agreeing to accept bribe money, including bribe money for his own benefit, in return for the approval of licenses for the project; and (iii) warning fellow enterprise members concerning the threat of a possible law enforcement investigation of the project.

9

## II. <u>THE RACKETEERING CONSPIRACY</u>

13.     Beginning no later than in or around 2006, and continuing through the date of the return of this indictment, in the Northern District of Illinois, Eastern Division, and elsewhere,

DMITRY FIRTASH, also known as "Dmytro Firtash," and "DF,"
ANDRAS KNOPP,
SUREN GEVORGYAN,
GAJENDRA LAL, also known as "Gaj,"
PERIYASAMY SUNDERALINGAM, also known as "Sunder," and
K.V.P. RAMACHANDRA RAO, also known as "KVP," and "Dr. KVP,"

defendants herein, being persons employed by and associated with an enterprise, that is, the enterprise as described in paragraphs 2-5 above, which enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly conspire together and with other persons known and unknown to the Grand Jury, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity as those terms are defined in Title 18, United States Code, Sections 1961(1) and (5), in violation of Title 18, United States Code, Section 1962(c), as further specified in paragraphs 14 and 15 below.

14.     The pattern of racketeering activity consisted of multiple acts indictable under:

a.     Title 18, United States Code, Section 1952 (travel in interstate and foreign commerce and use of facilities in interstate and foreign commerce in aid of racketeering activity); and

10

b.  Title 18, United States Code, Section 1956 (laundering of monetary instruments).

15.  As part of the conspiracy, each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

### III.  MANNER AND MEANS OF THE CONSPIRACY

16.  Among the manner and means of the conspiracy agreed to by the defendants were the following:

a.  It was part of the conspiracy that FIRTASH caused Group DF companies to, among other things: (a) participate in the project; (b) finance the project; (c) enter into written agreements for the purpose of concealing the illegal nature of bribe payments made in connection with the project; and (d) fund and transmit bribe payments made in connection with the project.

b.  It was further part of the conspiracy that one or more of the conspirators caused the transfer funds to a place in the United States from or through a place outside the United States, and from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, namely, with respect to a financial transaction occurring in part in the United States, an offense against a foreign nation, India, involving bribery of a public official. These funds transfers included but were not limited to the following:

i.  The transfer of approximately $200,000 from Greensboro Corporation to M/S Yash Fashion LLC on or about April 28, 2006.

ii.      The transfer of approximately $300,000 from Lovat Limited to M/S Yash Fashion LLC on or about May 10, 2006.

iii.      The transfer of approximately $500,000 from Lovat Limited to Eikon International Holding FZ LLC on or about June 14, 2006.

iv.      The transfer of approximately $2,000,000 from Lovat Limited to Gobest International Limited on or about November 27, 2006.

v.      The transfer of funds from Bothli Trade AG to Romtex Co. Limited on or about the following dates and in the following approximate amounts:

| Date | Amount |
|------|--------|
| March 26, 2007 | $150,000 |
| May 23, 2007 | $200,000 |
| June 6, 2007 | $100,000 |
| April 1, 2008 | $475,000 |

vi.      The transfer of funds from Romtex Co. Limited to M/S Yash Fashion LLC on or about the following dates and in the following approximate amounts:

| Date | Amount |
|------|--------|
| June 29, 2006 | $68,750 |
| July 17, 2006 | $308,500 |
| July 19, 2006 | $250,000 |
| August 4, 2006 | $200,000 |
| September 18, 2006 | $250,000 |

| Date | Amount |
|---|---|
| September 29, 2006 | $200,000 |
| November 8, 2006 | $200,000 |
| November 16, 2006 | $100,000 |
| December 18, 2006 | $70,000 |
| April 3, 2007 | $60,000 |
| May 29, 2007 | $150,000 |
| June 7, 2007 | $60,000 |
| June 12, 2007 | $40,000 |
| August 24, 2007 | $80,000 |
| September 13, 2007 | $20,000 |
| April 16, 2008 | $75,000 |
| June 27, 2008 | $200,000 |
| June 30, 2008 | $100,000 |
| July 3, 2008 | $100,000 |

  vii. The transfer of funds from Romtex Co. Limited to M/S Fashion Shop LLC on or about the following dates and in the following approximate amounts:

| Date | Amount |
|---|---|
| March 26, 2007 | $100,000 |
| July 2, 2008 | $100,000 |
| July 7, 2008 | $100,000 |

13

viii.    The transfer of funds from Romtex Co. Limited to Rewa International Limited on or about the following dates and in the following approximate amounts:

| Date | Amount |
|---|---|
| December 14, 2006 | $250,000 |
| December 18, 2006 | $250,000 |
| January 10, 2007 | $300,000 |
| January 12, 2007 | $200,000 |
| August 10, 2007 | $250,000 |
| August 16, 2007 | $250,000 |
| June 27, 2008 | $250,000 |
| July 2, 2008 | $250,000 |

ix.    The transfer of funds from Romtex Co. Limited to Penta Traders on or about the following dates and in the following approximate amounts:

| Date | Amount |
|---|---|
| August 9, 2007 | $125,000 |
| August 16, 2007 | $125,000 |

x.    The transfer of approximately $125,000 from Romtex Co. Limited to K.H. Traders on or about August 9, 2007.

xi.    The transfer of approximately $200,000 from Company B to Rewa International Limited on or about June 2, 2008.

14

xii.    The transfer of approximately $50,000 from Gobest International Limited to Individual A on or about November 14, 2007.

xiii.    The transfer of approximately $40,000 from Navasa Ventures Limited to Individual B on or about August 11, 2009.

xiv.    The transfer of funds from Bothli Trade AG to Individual B on or about the following dates and in the following approximate amounts:

| Date | Amount |
|---|---|
| August 18, 2008 | $50,000 |
| October 14, 2008 | $25,000 |
| August 18, 2009 | $45,000 |

xv.    The transfer of approximately $250,000 from Navasa Ventures Limited to Zahrat Al Khaleej on or about September 15, 2009.

xvi.    The transfer of funds from Navasa Ventures Limited to Triumphal Investments on or about the following dates and in the following approximate amounts:

| Date | Amount |
|---|---|
| February 12, 2010 | $500,000 |
| June 7, 2010 | $200,000 |

xvii.    The transfer of funds from Bothli Trade AG to Company C on or about the following dates and in the following approximate amounts:

15

| Date | Amount |
|---|---|
| July 28, 2009 | $28,500 |
| August 18, 2009 | $15,000 |
| October 19, 2009 | $43,500 |
| December 18, 2009 | $2,100 |
| May 25, 2010 | $13,500 |
| July 13, 2010 | $2,200 |

c.     It was further part of the conspiracy that one or more of the conspirators used and caused the use of foreign bank accounts held in the names of nominees located outside of India in order to receive funds intended for distribution to Indian public officials as bribes in return for approval of licenses needed for the project.

d.     It was further part of the conspiracy that one or more of the conspirators prepared documentation to make it falsely appear that money transferred for the purpose of paying bribes was transferred for legitimate commercial purposes.

e.     It was further part of the conspiracy that, in order to obtain approval of licenses for the project, one or more of the conspirators caused Individual C to be involved in the project, and did steer a contract and payments to a company controlled by Individual C, because of Individual C's status as a relative of Chief Minister Y.S. Rajasekhara Reddy.

f.     It was further part of the conspiracy that one or more of the conspirators traveled and caused others to travel in interstate and foreign commerce with intent to promote, manage, establish, carry on, and facilitate the promotion,

16

management, establishment, and carrying on of money laundering; and thereafter, did perform, cause to be performed and did aid and abet the performance of acts to promote, manage, establish, and carry on and facilitate the promotion, management, establishment, and carrying on of said unlawful activity including but not limited to the following:

       i.     On or about August 21, 2006, GEVORGYAN traveled from New York to Seattle, Washington, and thereafter met with representatives of Company A and discussed the progress of the project.

      ii.     On or about February 14, 2007, GEVORGYAN traveled from Cincinnati, Ohio to Seattle, Washington, and thereafter met with representatives of Company A and discussed, among other things, the progress of the project and the terms on which titanium products would be supplied to Company A.

      iii.     On or about June 28, 2009, LAL traveled from Greensboro, North Carolina to Hyderabad, India, for the purpose of attending a meeting with FIRTASH, KNOPP and others concerning the progress of the project.

      iv.     On or about July 5, 2009, LAL traveled from Chicago, Illinois to Greensboro, North Carolina, and thereafter (i) informed KNOPP about Individual C's planned meeting with an Indian public official concerning the project and Individual C's request for additional money for bribe payments; and (ii) instructed a subordinate to pay certain outstanding fees due to professionals who were assisting with the project.

v.     On or about July 14, 2009, LAL traveled from Greensboro, North Carolina to Flushing, New York, and thereafter attended a meeting with representatives of Company D for the purpose of soliciting the participation of Company D in the project.

vi.     On or about August 3, 2009, LAL traveled from Greensboro, North Carolina to New Delhi, India, and thereafter met with Individual C and discussed with Individual C the transfer of additional funds intended for use to bribe Indian public officials.

vii.     On or about August 16, 2009, LAL traveled from Chicago, Illinois to Greensboro, North Carolina, and thereafter instructed a subordinate to (i) transfer funds, which were intended for use to bribe Indian public officials, to a nominee of Individual C; and (ii) pay certain outstanding fees due to professionals who were assisting with the project and to pay other outstanding project expenses.

g.     It was further part of the conspiracy that one or more of the conspirators used and caused the use of the internet, and used and caused the use of e-mail accounts hosted on computer servers located within the United States with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of money laundering; and thereafter, did perform, cause to be performed and did aid and abet the performance of acts to promote, manage, establish, and carry on and facilitate the promotion, management, establishment, and carrying on of said unlawful activity, including but not limited to sending and receiving

18

e-mails to discuss the status of the conspirators' activities and to discuss and direct future activity.

h.     It was further part of the conspiracy that one or more of the conspirators used and caused the use of cellular telephones, including but not limited to a cellular telephone located in Chicago, Illinois, and operated on the interstate network of AT&T, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of money laundering; and thereafter, did perform, cause to be performed and did aid and abet the performance of acts to promote, manage, establish, and carry on and facilitate the promotion, management, establishment, and carrying on of said unlawful activity, including but not limited to communicating the status of the conspirators' activities and discussing and directing future activity.

i.     It was further part of the conspiracy that one or more of the conspirators used intimidation and threats to compel adherence to instructions provided by the enterprise's leadership and to prevent disclosure of the conspiracy to law enforcement.

j.     It was further part of the conspiracy that the conspirators misrepresented, concealed and hid, caused to be misrepresented, concealed and hidden, and attempted to misrepresent, conceal and hide the illegal operation of the enterprise and acts done in furtherance of the enterprise.

All of the above in violation of Title 18, United State Code, Section 1962(d).

19

## COUNT TWO

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.      Paragraph One of Count One of this indictment is hereby realleged and incorporated as if fully set forth herein.

2.      Beginning no later than in or around 2006 and continuing through the date of the return of this indictment, in the Northern District of Illinois, Eastern Division, and elsewhere,

DMITRY FIRTASH, also known as "Dmytro Firtash," and "DF,"
ANDRAS KNOPP,
SUREN GEVORGYAN,
GAJENDRA LAL, also known as "Gaj,"
PERIYASAMY SUNDERALINGAM, also known as "Sunder," and
K.V.P. RAMACHANDRA RAO, also known as "KVP" and "Dr. KVP,"

defendants herein, conspired with each other and with others known and unknown to the Grand Jury, to transport, transmit, and transfer a monetary instrument and funds to New York, a place in the United States, from a place outside the United States, and from New York and California, a place in the United States, to and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, namely, with respect to a financial transaction occurring in part in the

United States, an offense against a foreign nation, India, involving bribery of a public official (India's Prevention of Corruption Act, 1988), in violation of Title 18, United States Code, Section 1956(a)(2)(A).

All in violation of Title 18, United State Code, Sections 1956(h) and 2.

## COUNT THREE

The SPECIAL JANUARY 2012 GRAND JURY further charges:

On or about July 5, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DMITRY FIRTASH, also known as "Dmytro Firtash," and "DF,"
> ANDRAS KNOPP,
> SUREN GEVORGYAN,
> GAJENDRA LAL, also known as "Gaj,"
> PERIYASAMY SUNDERALINGAM, also known as "Sunder," and
> K.V.P. RAMACHANDRA RAO, also known as "KVP" and "Dr. KVP,"

defendants herein, traveled and caused another person to travel in interstate commerce from Chicago, Illinois to Greensboro, North Carolina, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, violation of Title 18, United States Code, Section 1956(a)(2)(A) (laundering of monetary instruments); and thereafter, the defendants did perform, cause to be performed and did aid and abet the performance of acts to promote, manage, establish, and carry on and facilitate the promotion, management, establishment, and carrying on of said unlawful activity;

In violation of Title 18, United States Code, Sections 1952 and 2.

## COUNT FOUR

The SPECIAL JANUARY 2012 GRAND JURY further charges:

On or about August 16, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DMITRY FIRTASH, also known as "Dmytro Firtash," and "DF,"
> ANDRAS KNOPP,
> SUREN GEVORGYAN,
> GAJENDRA LAL, also known as "Gaj,"
> PERIYASAMY SUNDERALINGAM, also known as "Sunder," and
> K.V.P. RAMACHANDRA RAO, also known as "KVP" and "Dr. KVP,"

defendants herein, traveled and caused another person to travel in interstate commerce from Chicago, Illinois to Greensboro, North Carolina, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, namely, violation of Title 18, United States Code, Section 1956(a)(2)(A) (laundering of monetary instruments); and thereafter, the defendants did perform, cause to be performed and did aid and abet the performance of acts to promote, manage, establish, and carry on and facilitate the promotion, management, establishment, and carrying on of said unlawful activity;

In violation of Title 18, United States Code, Sections 1952 and 2.

23

## COUNT FIVE

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.      Paragraph One of Count One of this indictment is hereby realleged and incorporated as if fully set forth herein.

2.      At times material to Count Five of this indictment:

      a.      GAJENDRA LAL was a "domestic concern" as that term was used in the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2(h)(1).

      b.      DMITRY FIRTASH, ANDRAS KNOPP, SUREN GEVORGYAN, PERIYASAMY SUNDERALINGAM, Group DF Limited, Ostchem Holding AG, GEMM and Bothli Trade AG were each a "person" as that term was used in the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-3(f)(1).

      c.      K.V.P. RAMACHANDRA RAO and Chief Minister Y.S. Rajasekhara Reddy were each a "foreign official" as that term was used in the Foreign Corrupt Practices Act, Title 15, United States Code, Sections 78dd-2(h)(2) and 78dd-3(f)(2).

3.      Beginning no later than in or around 2006 and continuing through the date of the return of this indictment, in the Northern District of Illinois, Eastern Division, and elsewhere,

DMITRY FIRTASH, also known as "Dmytro Firtash," and "DF,"
ANDRAS KNOPP,
SUREN GEVORGYAN,
GAJENDRA LAL, also known as "Gaj," and
PERIYASAMY SUNDERALINGAM, also known as "Sunder,"

defendants herein, did willfully conspire with each other and others known and unknown to the Grand Jury, to commit offenses against the United States, that is,

a.      willfully to make use of means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to any person, while knowing that all or a portion of such money and thing of value will be offered, given, and promised, directly and indirectly, to any foreign official and to any foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official and foreign political party and official thereof in their official capacities; (ii) inducing such foreign official and foreign political party and official thereof to do and omit to do an act in violation of their lawful duty; (iii) securing an improper advantage; and (iv) inducing such foreign official and foreign political party and official thereof to use their influence with a foreign government and instrumentalities thereof, including the Central Government of India and the State Government of Andhra Pradesh, to affect

25

and influence acts and decisions of such government and instrumentalities, in order to assist themselves, their associated companies, and their conspirators in obtaining and retaining business in connection with the project; in violation of Title 15, United States Code, Section 78dd-2(a); and

      b.    while in the territory of the United States, willfully and corruptly to make use of means and instrumentalities of interstate commerce, and to do any other acts, in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to any person, while knowing that all or a portion of such money and thing of value will be offered, given, and promised, directly and indirectly, to any foreign official and to any foreign political party and official thereof, for purposes of: (i) influencing acts and decisions of such foreign official and foreign political party and official thereof in their official capacities; (ii) inducing such foreign official and foreign political party and official thereof to do and omit to do an act in violation of their lawful duty; (iii) securing an improper advantage; and (iv) inducing such foreign official and foreign political party and official thereof to use their influence with a foreign government and instrumentalities thereof, including the Central Government of India and the State Government of Andhra Pradesh, to affect and influence acts and decisions of such government and instrumentalities, in order to assist themselves, their associated companies, and their conspirators in obtaining and retaining business in

26

connection with the project; in violation of Title 15, United States Code, Section 78dd-3(a).

**Overt Acts**

4.      It was further part of the conspiracy that the defendants committed one or more of the following acts, among others, in furtherance of and to effect the objects of the conspiracy:

a.      Paragraphs 16(b)(i)-(xvii) and 16(f)(i)-(vii) of Count One of this indictment are hereby realleged and incorporated as if fully set forth herein.

All in violation of Title 18, United States Code, Sections 371 and 2.

## FORFEITURE ALLEGATION ONE

The SPECIAL JANUARY 2012 GRAND JURY alleges:

1.      The allegations contained in Count One of the indictment are realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1963.

2.      As a result of the violation of Title 18, United States Code, Section 1962(d), as alleged in the foregoing indictment,

DMITRY FIRTASH, also known as "Dmytro Firtash," and "DF,"

defendant herein, has property and contractual rights affording him a source of influence over the enterprise, named and described herein, which the defendant has established, operated, controlled, conducted and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, thereby making all such property and contractual rights wherever located, and in whatever names held, subject to forfeiture to the United States, pursuant to Title 18, United States Code, Section 1963(a)(2).

3.      The interests of the defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2) include but are not limited to:

28

a.    Any and all direct and indirect interests of the defendant in Group DF Limited and the assets of Group DF Limited (including but not limited to the direct and indirect subsidiaries of Group DF Limited, including but not limited to those companies listed in Schedule A to this indictment as well as the assets of these companies listed in Schedule B to this indictment which are incorporated by reference), which afforded the defendant a source of influence over the enterprise; and

b.    Any and all direct and indirect interests of the defendant or rights against any entity through which defendant exercises ultimate beneficial ownership of Group DF Limited.

4.    To the extent that the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 1963, as a result of any act or omission by the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    have been transferred or sold to, or deposited with, a third party;

c.    have been placed beyond the jurisdiction of the Court;

d.    have been substantially diminished in value; or

e.    have been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America, pursuant to Title 18, United States Code, Section 1963(m) to seek forfeiture of any other property of the defendant up to the value of the property described above as being subject to forfeiture;

All pursuant to Title 18, United States Code, Section 1963.

## FORFEITURE ALLEGATION TWO

The SPECIAL JANUARY 2012 GRAND JURY further alleges:

1.     The allegations contained in Count Two of the indictment are realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

2.     As a result of their violation of Title 18, United States Code, Section 1956(h) as alleged in the foregoing indictment,

DMITRY FIRTASH, also known as "Dmytro Firtash," and "DF,"
ANDRAS KNOPP,
SUREN GEVORGYAN,
GAJENDRA LAL, also known as "Gaj,"
PERIYASAMY SUNDERALINGAM, also known as "Sunder," and
K.V.P. RAMACHANDRA RAO, also known as "KVP" and "Dr. KVP,"

defendants herein, have subjected to forfeiture to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all right, title, and interest they may have in any and all property, real and personal, involved in violation of Title 18, United States Code, Section 1956, and any property traceable to such property.

30

3.      The interests of the defendants, jointly and severally subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1) include, but are not limited to:

    a.      at least $10,597,050;

    b.      Any and all direct and indirect interests of each defendant (including but not limited to each defendant's ownership, shareholder and voting rights) in any of the companies involved in the violation set forth in Count Two, including but not limited to the companies listed in Schedule C to this indictment, which is incorporated by reference (together with the successors and assigns of each such company); and

    c.      Any and all direct and indirect interests of each defendant in the assets of any company involved in the violation set forth in Count Two, including but not limited to those assets listed in Schedule D to this indictment, which is incorporated by reference.

4.      To the extent that the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission by any defendant:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred to, sold to, or deposited with a third party;

    c.      has been placed beyond the jurisdiction of the Court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America to seek forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

_____

CHIEF, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

## SCHEDULE A

A.    The following companies organized/registered under the laws of Austria:

    1.    Aircraft Operation GmbH;
    2.    Centragas Holding AG;
    3.    DEG Handels;
    4.    Gentech Holding;
    5.    Group DF Holding AG;
    6.    Group DF International GmbH;
    7.    Group DF Media Holding AG;
    8.    Group DF Real Estate AG;
    9.    Ostchem Holding AG;
    10.    Ostchem International GmbH;
    11.    RAAM Beteil GmbH;
    12.    Sophia Plaza GmbH;
    13.    Ukrinvest; and
    14.    Zangas Hoch-und Tiefbau GmbH.

B.    The following companies organized/registered under the laws of the British Virgin Islands:

    1.    Beamminghart Limited;
    2.    Brivado Trading Limited;
    3.    Carricktown Limited;
    4.    Cattleborne Limited;
    5.    Crystal Planet;
    6.    DF Investments;
    7.    Foyston Limited;
    8.    GDFI Advisory Services Limited;
    9.    Gopa Establishment Limited;
    10.    Group DF Chemicals Limited;
    11.    Group DF International Real Estate;
    12.    Group DF Limited;
    13.    Group DF Titanium Limited;
    14.    Iconostar Limited;
    15.    Tamarin Investments Management Limited;
    16.    Warm Lakes Limited;
    17.    Weyford Limited; and
    18.    Zillan Management Holdings Inc.

C.   The following companies organized/registered under the laws of Cyprus:

1.    Alvan Trading Limited;
2.    Amat Holdings Limited;
3.    Anzola Ventures Limited;
4.    Asken Aviation Limited;
5.    Bakar Technologies Limited;
6.    Balmat Holdings Limited;
7.    Benam Holdings Limited;
8.    Bika Establishment Limited;
9.    Botanis Ventures Limited;
10.   Bothli Trade Limited;
11.   Bovalon Investments Limited;
12.   Briforma Holdings Limited;
13.   Bromso Limited;
14.   Carek Ventures Limited;
15.   Centragas Investments;
16.   Centragas Ventures;
17.   Clere Holdings Limited;
18.   Convalso Holdings Limited;
19.   Darisima Investments Limited;
20.   Dayala Trading Limited;
21.   Deltalink;
22.   Denby Holdings Limited;
23.   Denby Investments (Cyprus) Limited;
24.   Denby Ventures Limited;
25.   Endrola Investments Limited;
26.   Enther Holdings;
27.   Fleori Enterprises Limited;
28.   Gabbaro Holdings Limited;
29.   Gamarto Ventures;
30.   GEMM Economic Zones Limited;
31.   Group DF International;
32.   Hanma Trading Limited;
33.   Kalamazoo Limited;
34.   Kaleve Ventures Limited;
35.   Kaori Ventures Limited;
36.   Kettley Ventures Limited;
37.   Kevaras Trading Limited;
38.   Klamaoria Trading Limited;
39.   Krezer Holdings Limited;

A-2

40. Ladis Holdings Limited;
41. Lamberth Holdings Limited;
42. Lasari Holding Limited;
43. Lazare Property Ventures Limited;
44. Letan Investments Limited;
45. Lusina;
46. Mabofi Holdings Limited;
47. Matheron Limited;
48. Miro Trading Limited;
49. Modomiko Trading Limited;
50. Morottix Trading Limited;
51. Navasa Ventures Limited;
52. Nazado Enterprises Limited;
53. Nedramo Ventures Limited;
54. Nesiba Ventures Limited;
55. Nosilka;
56. Novartik Trading Limited;
57. Ostark Ventures Limited;
58. Ostchem Enterprises Limited;
59. Ostchem Holding Limited;
60. Ostchem International;
61. Ostchem Investments Limited;
62. Ostchem Services Limited;
63. Ostchem Ventures Limited;
64. Palmino Trading Limited;
65. Pasler Enterprise Limited;
66. Perison Limited;
67. Pitalovo Limited;
68. PLG UA Limited;
69. Porala Ventures Limited;
70. Powgen Tech Energy Company Limited;
71. Prelux Holdings Limited;
72. Proktora Holdings Limited;
73. Rezende Holdings Limited;
74. Salkrasti Holdings Limited;
75. Sangar Investments Limited;
76. Sanilia Ventures Limited;
77. Shrop Trading Limited;
78. Sison Establishment Limited;
79. Smoltero Holdings;
80. Smoreno Ventures Limited;
81. Spretona Limited;

A-3

82. Staher Investments Limited;
83. Telen Ventures Limited;
84. Titanium International;
85. Tolexis International Limited;
86. Tolexis Trading Limited;
87. Ukrinvest Aviation Limited;
88. Zangas Holdings (Cyprus) Limited; and
89. Zigrafo Investments Limited.

D. The following companies organized/registered under the laws of Germany:

1. Afkem AG (also known as ACI/Affchem AG); and
2. Ostchem Germany GmbH.

E. The following companies organized/registered under the laws of Hungary:

1. Elso Magyar Foldgaz es Energiakereskedelmi es Szolgaltato Eromu (Emfesz Eromu);
2. Elso Magyar Foldgaz es Energiakereskedelmi es Szolgaltato Kft (Emfesz Kft);
3. Euronit KFT;
4. Global Energy Mining and Minerals Kft;
5. Global Energy Mining and Minerals Limited;
6. JSC Peramatoni; and
7. Usztato Kft.

F. The following company organized/registered under the laws of the Netherlands:

1. BH Gas.

G. The following companies organized/registered under the laws of Seychelles:

1. Alberta Holdings Limited;
2. Bantry Holdings Limited;
3. DF Finance Limited;
4. Elvan Services Limited;
5. Gemgold Ent Limited;
6. Glenric Ventures Limited;
7. Goldmet Ventures Limited;
8. Gouda Management Limited;

A-4

9.  Haycraft Holdings Limited;
10. Hedwig Trading;
11. Jhan International Limited;
12. Karma Holdings Limited;
13. Liveti Limited;
14. Lovat Limited;
15. Nicoya Holdings Limited;
16. Romford Investment Holdings Limited;
17. Rossel Investments Limited; and
18. Samimona Limited.

H.  The following companies organized/registered under the laws of Switzerland:

1.  Bothli Trade AG;
2.  NF Trading AG;
3.  Ostchem Trading GmbH; and
4.  Rosukrenergo (RUE).

I.  The following companies organized/registered under the laws of the United Kingdom:

1.  Denby Investments PLC;
2.  Endrola Investments Limited PLC;
3.  Seafiled Limited; and
4.  Temion Gas & Oil Limited.

J.  The following companies organized/registered under the laws of an unknown jurisdiction:

1.  Cimarron Commercial Services; and
2.  Greensboro Corporation.

A-5

## SCHEDULE B

A.     All funds in the following bank accounts located in Austria:

    1.     All bank accounts in the name of Ostchem Trading GmbH, including account number ******4301 at Raiffeisen Zentralbank Oesterreich.

B.     All funds in the following bank accounts located in Cyprus:

    1.     All bank accounts in the name of Bothli Trade AG, including account number ******0806 and ******4048 at the Bank of Cyprus;

    2.     All bank accounts in the name of Bothli Trade Limited, including account number ******1206 at the Bank of Cyprus;

    3.     All bank accounts in the name of Bromso Limited, including account number ******6206 at the Bank of Cyprus;

    4.     All bank accounts in the name of Deltalink Limited, including account number ******9906 at the Bank of Cyprus;

    5.     All bank accounts in the name of DF Finance Limited, including account number ******5806 at the Bank of Cyprus;

    6.     All bank accounts in the name of Elvan Services Limited, including account number ******8806 at the Bank of Cyprus;

    7.     All bank accounts in the name of Foyston Limited, including account number ******9806 at the Bank of Cyprus;

    8.     All bank accounts in the name of Global Energy Mining and Minerals Limited, including account number ******4206 at the Bank of Cyprus;

    9.     All bank accounts in the name of Greensboro Corporation, including account number ******7506 at the Bank of Cyprus;

    10.    All bank accounts in the name of Group DF Limited, including account number ******0506 at the Bank of Cyprus;

11.     All bank accounts in the name of Lovat Limited, including account number ******1006 at the Bank of Cyprus; and

12.     All bank accounts in the name of Navasa Ventures Limited, including account number ******9806 at the Bank of Cyprus.

C.      All funds in the following bank accounts located in Hungary:

1.      All bank accounts in the name of Global Energy Mining and Minerals Limited, including:

   a.      Account numbers ************0002, ************0005 and ************0005 at CIB Bank Zrt;

   b.      Account numbers ****2102, ****4096, ****4089, ****2092 and ************1062 at Kereskedelmi es Hitelbank Rt;

   c.      Account number ************3285 at MKB Bank;

   d.      Account numbers ************0603, ************0604, ************0886 and ************0666 at Bank of China (Hungaria) Rt; and

   e.      Account number **4632 at K&H Bank Zrt.

2.      All bank accounts in the name of Mabofi Holdings Limited, including account number *************0005 at Central European International Bank.

D.      All funds in the following bank accounts located in the Netherlands:

1.      All bank accounts in the name of Ostchem Germany GmbH, including account number *****2001 at Amsterdam Trade Bank NV;

2.      All bank accounts in the name of Ostchem International GmbH, including account number *****2001 at Amsterdam Trade Bank NV; and

3.      All bank accounts in the name of Tolexis International Limited, including account number at *****1001 at Amsterdam Trade Bank NV.

B-2

E.    All funds in the following bank accounts located in Switzerland:

    1.    All bank accounts in the name of Bothli Trade AG, including:

        a.    Account number ********2001 at BNP Paribas Suisse;

        b.    Account number ********7821 at Credit Suisse; and

        c.    Account numbers ********2611, ********8093, ********1117 and ********8085 at Zurcher Kantonalbank.

    2.    All bank accounts in the name of Ostchem Investments Limited, including account number ******0333 at Gazprombank (Switzerland) Ltd.

    3.    All bank accounts in the name of Ostchem Ventures Limited, including account number ******0333 at Gazprombank (Switzerland) Ltd.

    4.    All bank accounts in the name of Ostchem Holding Limited, including account number ******0333 at Gazprombank (Switzerland) Ltd.

## SCHEDULE C

A.   The following company organized/registered under the laws of Austria:

    1.   Ostchem Holding AG.

B.   The following company organized/registered under the laws of the British Virgin Islands:

    1.   Foyston Limited.

C.   The following company organized/registered under the laws of Cyprus:

    1.   Deltalink Limited.

D.   The following company organized/registered under the laws of Hungary:

    1.   Global Energy Mining and Minerals Limited.

E.   The following companies organized/registered under the laws of the Seychelles:

    1.   DF Finance Limited;
    2.   Elvan Services Limited;
    3.   Lovat Limited; and
    4.   Navasa Ventures Limited.

F.   The following company organized/registered under the law of Switzerland:

    1.   Bothli Trade AG.

G.   The following company organized/registered under the laws of an unknown jurisdiction:

    1.   Greensboro Corporation.

## SCHEDULE D

A.    All funds in the following bank accounts located in Cyprus:

    1.    All bank accounts in the name of Bothli Trade AG, including account numbers ******0806 and ******4048 at the Bank of Cyprus;

    2.    All bank accounts in the name of Deltalink Limited, including account number ******9906 at the Bank of Cyprus;

    3.    All bank accounts in the name of DF Finance Limited, including account number ******5806 at the Bank of Cyprus;

    4.    All bank accounts in the name of Elvan Services Limited, including account number ******8806 at the Bank of Cyprus;

    5.    All bank accounts in the name of Foyston Limited, including account number ******9806 at the Bank of Cyprus;

    6.    All bank accounts in the name of Global Energy Mining and Minerals Limited, including account number ******4206 at the Bank of Cyprus;

    7.    All bank accounts in the name of Greensboro Corporation, including account number ******7506 at the Bank of Cyprus;

    8.    All bank accounts in the name of Lovat Limited, including account number ******1006 at the Bank of Cyprus; and

    9.    All bank accounts in the name of Navasa Ventures Limited, including account number ******9806 at the Bank of Cyprus.

B.    All funds in the following bank accounts located in Hungary:

    1.    All bank accounts in the name of Global Energy Mining and Minerals Limited, including:

        a.    Account numbers ************0002, ************0005 and ************0005 at CIB Bank Zrt;

b.    Account numbers ****2102; ****4096, ****4089, ****2092 and ************1062 at Kereskedelmi es Hitelbank Rt;

c.    Account number ************3285 at MKB Bank; and

d.    Account numbers ************0603, ************0604, ************0886 and ************0666 at Bank of China (Hungaria) Rt.

C.    All funds in the following bank accounts located in Switzerland:

1.    All bank accounts in the name of Bothli Trade AG, including:

a.    Account number ********2001 at BNP Paribas Suisse;

b.    Account number ********7821 at Credit Suisse; and

c.    Account numbers ********2611, ********8093, ********1117 and ********8085 at Zurcher Kantonalbank.